UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| RICARDO PIERRE-LOUIS, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Civil No. 07-144-P-S |
| | ) | Criminal No. 04-23-P-S |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Ricardo Pierre-Louis, is serving a life sentence upon conviction for conspiring to possess with the intent to distribute 50 or more grams of cocaine base in violation of 21 U.S.C. § 841(b)(1)(A).  That provision further requires that: "If any person commits a violation of this subparagraph … of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence."  21 U.S.C. § 841(b)(1)(A).  Pierre-Louis had two or more final prior felony drug offenses.  After pursuing an unsuccessful direct appeal, Pierre-Louis has filed a 28 U.S.C. § 2255 motion containing six grounds.  I recommend that the Court deny Pierre-Louis § 2255 relief for the following reasons.

*Discussion*

Pierre-Louis identifies the following six grounds for habeas relief:  One, counsel was ineffective when he did not request a severance of trial from Pierre-Louis's co-defendant; two, counsel did not adequately advise Pierre-Louis apropos his guilty plea;

three, 21 U.S.C. § 846 is unconstitutional; four, the sentencing court could not impose a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) given the limitations of the grand jury indictment and jury verdict; five, the stiff sentence for a cocaine base offense requires a jury finding that the substance was crack cocaine; and, six, the sentencing guidelines for crack offenders is unconstitutionally vague and meaningless and the ratio should be set aside.

## Pierre-Louis's 28 U.S.C. § 2255 Claims

### A. The Two Ineffective Assistance of Counsel Grounds

"A criminal defendant claiming a Sixth Amendment ineffective assistance of counsel violation must" under Strickland v. Washington, 466 U.S. 668 (1984):

> "establish that (1) 'counsel's representation fell below an objective standard of reasonableness' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir.2005) (quoting Strickland, 466 U.S. at 684). Under the first prong of Strickland, there is a "strong presumption" that counsel's strategy and tactics fall "within the range of reasonable professional assistance," and courts should avoid second-guessing counsel's performance with the use of hindsight. Strickland, 466 U.S. at 689.
>
>> It is all too tempting for a defendant to second-guess counsel's assistance after conviction ..., and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.
>
> Id. It is only where, given the facts known at the time, counsel's "choice was so patently unreasonable that no competent attorney would have made it," that the ineffective assistance prong is satisfied. Under the prejudice prong, not all errors by counsel are sufficient to meet the standard of a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different. Id. at 693-94. Rather, "'[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Smiley, 422 F.3d at 20 (quoting Strickland, 466 U.S. at 694). This is a "highly demanding" and "heavy burden." Williams, 529 U.S. at 393. A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong. Strickland, 466 U.S. at 697.

Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)

### 1.    Ground One: Counsel's performance vis-à-vis severance

In his first ground Pierre-Louis faults his attorney for not requesting a severance of his trial from the trial of his two co-defendants Anthony Day and Jestina Weems. He explains:

> During the opening statements of Weems['s] defense attorney, counsel informed the jury that Weems['s] defense was that she "…fell in love with the wrong guy, got involved with the wrong guy." "[I]n that apartment there was some activities going on that were not according to law…" "Being the girlfriend of someone (Petitioner) who is doing something illegal is not enough."

(Sec. 2255 Mem. at 3-4.)   Pierre-Louis believes that counsel should have objected to these statements and requested a severance "in light of the defense tactic[]s that virtually informed the jury that the petitioner was guilty of what he was charged." (Id. at 4.) He also complains that counsel "did nothing to correct the highly prejudicial opening of Weems['s] counsel and failed to correct the misstatements during his arguments before the jury." (Id.) "In the instant case," Pierre-Louis opines,

> Prejudice should be assumed. Counsel for the petitioner virtually conce[]ded his guilt by not objecting to the opening statements of Weems counsel and then failed to seek a severance after he realized that the defense was antagonistic. The fact that there was other evidence presented during the trial that could have established the petitioner's guilt is irrelevant to the fact that the jury was already informed that petitioner was, in fact, guilty.

(Id. at 6; see also Reply Mem. at 4-5.)

Ruling on Pierre-Louis's severance claim on direct appeal, the First Circuit explained: "[I]n the absence of a request for severance, we see no abuse of the court's broad discretion not to sever the defendants' trials sua sponte, as there is no basis on

which to conclude that appellant did not receive a fair trial.  See United States v. Magana, 127 F.3d 1, 7 (1st Cir. 1997)."  United States v. Pierre-Louis, No. 05-1463 (May 30, 2006).  In pressing this ineffective assistance claim, Pierre-Louis focuses on the First Circuit's observation that there was no abuse of discretion by the Court in not directing a severance, "in the absence of a request for severance."

With regards to the prospects of a motion to sever: "In the context of conspiracy, severance will rarely, if ever, be required."  United States v. Searing, 984 F.2d 960, 965 (8th Cir.1993); accord United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995); United States v. Brandon, 17 F.3d 409, 440 (1st Cir. 1994).  "Where evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect."  United States v. O'Bryant, 998 F.2d 21, 26 (1st Cir. 1993) (collecting cases).  Pierre-Louis is claiming ineffective assistance for not making such a request on the basis of the opening statement on behalf of co-defendant Weems.   Pierre-Louis would have faced an extremely high hurdle had he interjected a motion for severance after trial had begun solely on the basis of a non-evidentiary statement in Weems's opening statement. As the Government points out this court gave exemplary instructions on this score.  The Court told the jury "you will have to give separate consideration to the case against each defendant. Do not think of the defendants as a group.  (Trial Tr. at  1347.)   It stressed: "It is your duty to consider the charge against each defendant separately and to return a separate verdict for each defendant." (Id. at 1347.) With regards to evidence admitted for a limited purpose, the Court said:

> A particular item of evidence is sometimes received for a limited purpose only, that is, it can be used for one particular purpose and not another

purpose. For example, during the trial you heard evidence that one or more defendants either distributed and/or possessed other drugs besides cocaine base, carried firearms, or engaged in acts of violence. While these acts, should you believe they occurred, may be related to the conspiracy, these related acts are not the acts for which any of the defendants is now on trial. You may not use this evidence of related acts to infer that because of the defendant's character the defendant carried out the conspiracy charged in this case. In other words, you can't use these acts to say if the person did this they must be of bad character and, therefore, they did the conspiracy. No, you can't. Evidence of these related acts was admitted for a limited purpose to prove knowledge, intent, agreement, plan and/or preparation. These are the only purposes for which you can consider these related acts.

(Id. at 1350.)  The Court also made it clear in its instructions that the arguments and statements of the lawyers were not evidence: "What they say in their opening statements, closing arguments and at other times intended to help you interpret the evidence but it's not evidence."  (Id. at 1354.)

As a matter of trial strategy, Pierre-Louis's counsel did not perform below the Strickland standard in not pressing this Court for severance of his trial from his co-defendants.  See United States v. Shareef, 190 F.3d 71, 77 -78 (2d Cir. 1999).[1] Furthermore,  "if the First Circuit has denied … relief on direct appeal because of a lack of merit on a substantive claim," which it did here, "such a determination does sway this court's Strickland performance and prejudice analysis if the movant's claim is that counsel performed deficiently apropos that legal issue."  Brooks v. United States, Civ. No. 07-115-P-S, 2007 WL 4180540, *1 (D. Me. 2007) (recommended decision).[2]

---

[1]     With respect to the prejudice prong of the Strickland inquiry, this Court is in the best position to analyze whether or not it would have seriously considered a motion to sever.  See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

[2]     In ruling on a direct appeal challenge that may be somewhat relevant to this claim, the First Circuit also noted:

> After review of the record, including the transcripts of the trial and sentencing hearing, we conclude that appellant's claims of error have not been substantiated.  First, there was no objection in the district court to evidence which appellant now characterizes as prejudicial.  Review is therefore for plain error.  See United States v. Muriel-Cruz, 412

**2.      *Ground Two: Failure to adequately advise Pierre-Louis regarding the acceptance of a guilty plea offer***

Pierre-Louis's second 28 U.S.C. § 2255 claim is that his attorney performed below the level required by the Sixth Amendment in advising Pierre-Louis apropos a plea offer by the Government.  He explains that prior to the start of trial he received a letter from his attorney stating that Pierre-Louis <u>should</u> accept a plea offered by the Government:

> At the time the petitioner understood that the offer was to a term of 25 years [i]ncarceration.  However, petitioner was under the impression that the term of imprisonment he could have received if he was not successful at trial would be for a period of ten years under the statute.  In effect, counsel never advised petitioner further as to the advantages of taking the plea offer.

(Sec. 2255 Mem. at 7.)  Pierre-Louis believes that the "mere act" of providing him with a letter indicating he should accept the plea offer "without more, falls far short of providing the petitioner with adequate assistance of counsel."  (<u>Id.</u> at 8.)  In his reply memorandum Pierre-Louis again indicates that someone informed him that he would only face a ten-year sentence if he went to trial when he was actually facing a mandatory life sentence without parole (Reply Mem. at 3);  he nowhere avers that it was his attorney who told him that he could only face ten years if he proceeded to trial.

Pierre-Louis does not allege that the plea agreement contained any provision that would have changed the fact that, in view of the amount of cocaine base involved in the conspiracy and his criminal history, he was subject to a <u>statutorily</u> mandated life

---

F.3d 9, 11 (1st Cir. 2005).  In the context of the case, we see no plain error in the admission of evidence, much of which was properly admitted.  Even assuming error in the admission of some evidence, it was not prejudicial in the context of this case.  Given the great deal of evidence of appellant's guilt, we can find no error that could arguably have affected the outcome of the trial.  <u>See</u> United States v. <u>Mercado Irazarry</u>, 404 F.3d 497, 500 (1st Cir. 2005).
<u>United States v. Pierre-Louis</u>, No. 05-1463 (May 30, 2006).

sentence.  With respect to drug quantity, the PSI attributed 1080 grams of crack to Pierre-Louis, describing this as "a very low estimate."  (PSI at 5-6.)  The jury found Pierre-Louis responsible for 199 grams of base and concluded that Pierre-Louis was the leader or organizer of the conspiracy.  (See Sentencing Tr. at 43-44.)  Pierre-Louis does not now challenge the factual bases for his sentence-triggering criminal history.  (See PSI at 8-11.)  So, had Pierre-Louis heeded counsel's advice and pled guilty, the 25-year recommendation by the Government would have been trumped by the mandated life sentence of 21 U.S.C. § 841(b)(1)(A) ("If any person commits a violation of this subparagraph … of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence.").  In fact, tenable ineffective assistance claims are more likely to arise when a client is advised to take a plea agreement that promises a Government recommendation of a capped sentence and the defendant later realizes that his or her criminal history makes the agreement valueless, meaning that the defendant forfeited a right to trial and the hope of a not-guilty verdict to no end. See United States v. Colon-Torres, 382 F.3d 76 (1st Cir. 2004).   But even in such a posture, such claims are not easy winners. See  United States v. Silva, 430 F.3d 1096, 1099 (10th Cir. 2005).

**B.      Ground Three: The Constitutionality of 21 U.S.C. § 846**

One of the criminal statutes under which Pierre-Louis was charge was 21 U.S.C. § 846, which provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  21

U.S.C. § 846.  It is Pierre-Louis's contention that this statute is unconstitutional because it removes from the jury the assessment of facts that increase the prescribed range of penalties to which the defendant is exposed.   (Sec. 2255 Mem. at 8; Reply Mem. at 3-4.) "Since § 846 contains mens rea requirements," Pierre-Louis reasons, "the Court must further find that criminal intent as to the type and quantity of drugs as an element of the new offense i.e., the new interpretation of § 846.  (Sec. 2255 Mem. at 9.)

Any claim for relief from his 21 U.S.C. § 846 conviction on a drug quantity theory is foreclosed by First Circuit law and the fact that the jury made a determination of drug quantity in this case.  See  United States v. Gonzalez-Velez, 466 F.3d 27, 35 -36& n. 8 (1st Cir. 2006).  Although he focused on the drug-quantity concern in his Section 2255 Memorandum, (Sec. 2255 Mem. at 9-16), in his reply memorandum Pierre-Louis states that his challenge to the constitutionality of the statute is not based on drug quantity and insists that, the drug quantity issues aside, § 846 removes from the jury facts that increase the prescribed range of penalties in which a criminal defendant is exposed.  (Reply Mem. at 3-4.)  Judging from his Section 2255 memorandum, I gather that he means that the provision does not require the jury to find that a particular controlled substance was involved; he writes, "because the Petitioner here has been convicted of conspiracy to distribute a controlled substance only, he has been punished for conduct that the law proscribed no punishment."  (Sec. 2255 Mem. at 17.)   The jury expressly found that the conspiracy involved cocaine base and that Pierre-Louis was not only a member of the conspiracy, but that he was an organizer or leader. Pierre-Louis may have a handle on "a new interpretation of § 846," but I am at a loss to see how there is any possible merit in this ground.

What is more this is a claim that could have been but was not raised on direct appeal:

> "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994) (internal citation omitted). The principles of finality, federalism, and comity inform the scope of habeas review. <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 7 (1st Cir.2001) (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 633-35(1993); <u>Teague v. Lane</u>, 489 U.S. 288, 308-10 (1989)). Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence. <u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998).

<u>Berthoff v. United States</u>, 308 F.3d 124, 127 -28 (1st Cir. 2002).  Pierre-Louis has made no showing of cause for failing to raise this challenge in his direct appeal.

**C.       *Ground Four:  Concerning the Grand Jury Indictment and Jury Verdict***

Quite frankly, I am mystified by the point of Pierre-Louis's fourth ground.  The United States divines that he means to argue that the Court erroneously sentenced him to life without a factual finding in the grand jury's indictment or by the jury that found him guilty.  It points out that his prior convictions drove the life sentence and that <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 226-27 (1998) remains binding law on the lower federal courts.

I am not sure this is really the gist of Pierre-Louis's fourth-ground argument.  For instance, with respect to the life imprisonment section of 21 U.S.C. § 841(b)(1)(A),  he writes:

> First, it is obvious from the Statute's face – from using its use of  'a violation' – that this section refers to a single violation.  Thus, where a defendant violates subsection (a) more than once, possessing less than 50 grams of cocaine base on each separate occasion, subsection (b) does not apply, for there is no single violation involving "50 grams or more" of cocaine base.  This is true even if the sum total of the cocaine base

involved altogether, over the multiple violations amounts to more than 50 grams.

(Sec. 2255 Mem. at 18.)   He also seems to be asserting that he could only be sentenced to a life sentence if his prior convictions were convictions under 21 U.S.C. § 841(b)(1)(A) or  pursuant to §§ 849, 859, 860, or 861.  (Id. at 18-19.)  These challenges are spuriously novel and entirely frivolous.

Furthermore, Pierre-Louis has not addressed this ground in his reply memorandum so it would be fair to rest on the Government's interpretation given how difficult it is to parse the thrust  -- let alone divine any merit -- in his Ground Four argument.  See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).  And, as with his previous ground this is a claim that should have been raised on direct appeal, Berthoff, 308 F.3d at 127 -28, and Pierre-Louis has made no showing of cause for failing to raise this challenge before the First Circuit.

**D.      *Grounds Five and Six-Challenges to Sentence based on Crack Cocaine***

Pierre-Louis's final two 28 U.S.C. § 2255 grounds pertain to the identity of and sentencing ratio attributed to crack cocaine.  In Ground Five he argues that because of the enhanced penalties of § 841(b)(1)(A) cocaine base crimes the jury must make a finding that the substance was the crack cocaine.  (Sec. 2255 Mem. at 19-20.)  In his sixth ground he argues that the sentencing guidelines which use a 100 to 1 ratio for the distribution of cocaine base relative to cocaine are "scientifically meaningless" and should not have applied in his case.  (Id. at 20.)  He further argues that this skewed ratio violates the equal protection clause of the United States Constitution.  (Id. at 22-25.)   In his reply memorandum Pierre-Louis requests that the Court hold his challenge to the 100:1

crack/cocaine ratio in the sentencing guidelines in abeyance until the resolution of an

unidentified pending United States Supreme Court case.  It seems that Pierre-Louis is

referring to <u>Kimbrough v. United States</u>, __ U.S. __, 128 S. Ct. 558 (2007), a case

decided on December 10, 2007.  As with his other non-ineffective assistance claims,

Pierre-Louis these two claims are procedurally defaulted. <u>See</u> <u>Berthoff</u>, 308 F.3d at 127 -

28.

　　　　As for the merits of the sentencing claims, with respect to the identity of the drug

as being crack rather than being base, the indictment alleged that the conspiracy involved

cocaine base.   At trial this Court clearly instructed that to support a guilty verdict the

members of the jury had to find that Pierre-Louis had possession with intent to distribute

50 or more grams of cocaine base (Trial Tr. at 1359) although it did not define the term

"cocaine base."  The jury form also referred to cocaine base as the subject of the charge.

There is no reason to remake the wheel; the United States thoroughly summarizes the

testimony at trial and this summary demonstrates that there was ample evidence that

Pierre-Louis was involved in a conspiracy to distribute crack cocaine or cocaine base.

(<u>See</u> Gov't Resp. at  4-17.)

　　　　The First Circuit Court of Appeals ruled in <u>United States v. Medina</u>, 427 F.3d

88 (1st Cir. 2005) on an identical challenge that, like Pierre-Louis's, was not raised at trial,

but one that, unlike Pierre-Louis's was raised on direct appeal.  The Panel explained:

> 　　　Medina urges that the trial court erred in instructing the jury on the
> charge of possession of cocaine base. He did not raise this objection at
> trial. In the absence of an objection below, we review the trial court's
> instruction of the jury for plain error. <u>United States v. Bailey</u>, 405 F.3d
> 102, 110 (1st Cir.2005).
> 　　　The trial judge instructed the jury that, in order to sustain its
> burden of proof as to the cocaine base charge under 21 U.S.C. § 841(a)(1)
> and (b)(1)(A)(iii), the government was required to prove, <u>inter</u> <u>alia</u>, "that

the controlled substance involved here was cocaine base." Medina claims that the instruction was deficient because it permitted the jury to convict him under the statute, which punishes trafficking in "cocaine base," § 841(b)(1)(A)(iii), without determining whether the substance he possessed was the particular form of cocaine base known as "crack" or was rather some other form of cocaine base.

> The question whether the statute regulates only possession of crack or whether its rule encompasses other forms of cocaine base is the subject of some debate and of a conflict among the circuits. See, e.g., United States v. Edwards, 397 F.3d 570, 575-77 (7th Cir.2005) (describing split).[3] In this circuit, however, it is settled that 21 U.S.C. § 841 regulates exactly what its terms suggest: the possession of any form of "cocaine base." United States v. Lopez-Gil, 965 F.2d 1124, 1134 (1st Cir.1992) (opinion on rehearing); see also United States v. Richardson, 225 F.3d 46, 49 (1st Cir.2000). Crack is a form of cocaine base and so is among the substances regulated by the statute, but the government is not required to prove that the substance involved in a given case is crack in order to secure a conviction under it. Medina cannot show plain error because the trial court's instructions were simply correct, and Medina's challenge on this score therefore also fails.

427 F.3d at 92 (footnote omitted).  This remains the law in the First Circuit. See, e.g., United States v. Tejeda, 481 F.3d 44, 56 -57 (1st Cir. 2007); see cf. United States v. Jimenez, __ F.3d __, __ 2007 WL 4531791, *6 (1st Cir. Dec. 27, 2007).[4]

> With regards to the 100:1 cocaine to base ratio, Pierre-Louis has not cited to the

recent United States Sentencing Guideline amendments pertaining to the crack/powder

---

[3]    Oddly, in its responsive memorandum the Government cites to Edwards ostensibly in support of its argument.  (Resp. Mem. at 29.)  Edwards, a pre-United States Supreme Court United States v. Booker 543 U.S. 220 (2005) case,  held as to this issue:

> A lingering and stratified circuit split on a matter of such importance to the administration of criminal justice surely warrants the attention of Congress or resolution by the Supreme Court. In the meantime, however, we reaffirm our circuit's holding in Booker that for purposes of the mandatory minimum sentence in 21 U.S.C. § 841(b)(1)(A)(iii), the phrase "cocaine base" refers to cocaine base that constitutes crack. Edwards' two ten-year sentences were premised on the district court's factual finding that Edwards possessed noncrack forms of cocaine base and its legal conclusion that any form of cocaine base qualified for the mandatory minimum. The district court's legal conclusion was in error; we therefore reverse and remand for resentencing in accordance with this opinion.

397 F.3d at 577.   In other words, the First and the Seventh Circuits are split on this issue.

[4]    The First Circuit Court of Appeals ruled on Pierre-Louis's direct appeal challenge to the instructions: "[T]he court did not usurp the function of the jury but rather instructed it as to the law in regard to the legal equivalence of cocaine base and crack cocaine.  See United States v. Pho, 433 F.3d 53, 55 n.1 (1st Cir. 2006)."  United States v. Pierre-Louis, No. 05-1463 (May 30, 2006).

ratios.  The Commission has been working on a revision of this ratio for some time, see Kimbrough, 128 S. Ct. at 566-69, and an "alteration, which became effective on November 1, 2007, reduces the base offense level associated with each quantity of crack by two levels.  See Amendments to the Sentencing Guidelines for United States Courts, 72 Fed.Reg. 28571-28572 (2007)" id. at 569.  More recently, the Commission decided that  this amendment will become retroactive on March 3, 2008, see, United States v. Jimenez, __ F.3d __, __ 2007 WL 4531791, *6 n.6 (1st Cir. Dec. 27, 2007), meaning that, as of that date, impacted defendants serving eligible cocaine-base sentences will be able to move for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).

However, despite the cocaine-base-defendant-favorable outcomes of the new Guideline amendments and Kimbrough,  Kimbrough actually forecloses Pierre-Louis's powder-to-base argument for 28 U.S.C. § 2255 relief from his sentence.[5]  This is because Pierre-Louis was sentenced according to the statutory mandatory sentence of life, a sentence driven by the amount of cocaine base found by the jury; his sentence did not turn on the application of the sentencing guidelines.  Accordingly, the key passages of the Kimbrough opinion applicable to Pierre-Louis's situation are those that explain the difference between the cocaine base/ cocaine powder ratio for guidelines purposes and the cocaine base/cocaine powder ratio apropos statutorily mandated sentences.

The Kimbrough majority responded to an argument by the Government that the Anti-Drug Abuse Act of 1986 "prohibits the Sentencing Commission or the sentencing courts from disagreeing with the 100-to-1 ratio" because such guideline deviation "would be 'logically incoherent' when combined with the mandatory minimum sentence based on

_____

[5]     To date Pierre-Louis has not filed a motion for reduction of his sentence; my recommendation here is not meant to comment on the prospects of any such motion.

the 100-to-1 ratio."  128 S. Ct. at 571.  The Supreme Court responded that the 1986 Act "mandates only maximum and minimum sentences…. [and] says nothing about the appropriate sentences within these brackets, and we decline to read any implicit directive into that congressional silence …. for Congress has shown that it knows how to direct sentencing practices in express terms."  Id.  It then explained:

> Our cautious reading of the 1986 Act draws force from Neal v. United States, 516 U.S. 284 (1996). That case involved different methods of calculating lysergic acid diethylamide (LSD) weights, one applicable in determining statutory minimum sentences, the other controlling the calculation of Guidelines ranges. The 1986 Act sets mandatory minimum sentences based on the weight of "a mixture or substance containing a detectable amount" of LSD. 21 U.S.C. § 841(b)(1)(A)(v), (B)(v). Prior to Neal, we had interpreted that language to include the weight of the carrier medium (usually blotter paper) on which LSD is absorbed even though the carrier is usually far heavier than the LSD itself. See Chapman v. United States, 500 U.S. 453, 468 (1991). Until 1993, the Sentencing Commission had interpreted the relevant Guidelines in the same way. That year, however, the Commission changed its approach and "instructed courts to give each dose of LSD on a carrier medium a constructive or presumed weight of 0.4 milligrams." Neal, 516 U.S., at 287 (citing USSG § 2D1.1(c), n. (H) (Nov.1995)). The Commission's change significantly lowered the Guidelines range applicable to most LSD offenses, but defendants remained subject to higher statutory minimum sentences based on the combined weight of the pure drug and its carrier medium. The defendant in Neal argued that the revised Guidelines and the statute should be interpreted consistently and that the "presumptive-weight method of the Guidelines should also control the mandatory minimum calculation." 516 U.S., at 287. We rejected that argument, emphasizing that the Commission had not purported to interpret the statute and could not in any event overrule our decision in Chapman. See 516 U.S., at 293-295.
>
> If the Government's current position were correct, then the Guidelines involved in Neal would be in serious jeopardy. We have just recounted the reasons alleged to justify reading into the 1986 Act an implicit command to the Commission and sentencing courts to apply the 100--to--1 ratio to all quantities of crack cocaine. Those same reasons could be urged in support of an argument that the 1986 Act requires the Commission to include the full weight of the carrier medium in calculating the weight of LSD for Guidelines purposes. Yet our opinion in Neal never questioned the validity of the altered Guidelines. To the contrary, we stated: "Entrusted within its sphere to make policy judgments, the Commission may abandon its old methods in favor of what it has deemed

a more desirable 'approach' to calculating LSD quantities." Id., at 295. If the 1986 Act does not require the Commission to adhere to the Act's method for determining LSD weights, it does not require the Commission--or, after Booker,[6] sentencing courts--to adhere to the 100--to--1 ratio for crack cocaine quantities other than those that trigger the statutory mandatory minimum sentences.

Id. at 571 -72 (footnote omitted).

In Kimbrough the Government also advanced another argument against allowing sentencing courts to depart from the 100-to-1 ratio, the Supreme Court's rejection of which is key to my conclusion that Kimbrough provides no hope of relief for Pierre-Louis from his 21 U.S.C. § 841(b)( 1)(A) mandated (as opposed to guideline driven) sentence.  As the United States Sentencing Commission has now amended its guidelines to reduce the crack/powder ratio and made that revision retroactively applicable to eligible defendants serving guideline-driven sentences, Pierre-Louis, because his sentence in statutorily mandated, is in a disparate position vis-à-vis his guideline-sentenced peers. The Kimbrough majority addressed this "cliff" problem as follows:

Finally, the Government argues that if district courts are free to deviate from the Guidelines based on disagreements with the crack/powder ratio, unwarranted disparities of two kinds will ensue. See 18 U.S.C. § 3553(a)(6) (sentencing courts shall consider "the need to avoid unwarranted sentence disparities"). First, because sentencing courts remain bound by the mandatory minimum sentences prescribed in the 1986 Act, deviations from the 100--to--1 ratio could result in sentencing "cliffs" around quantities that trigger the mandatory minimums. Brief for United States 33 (internal quotation marks omitted). For example, a district court could grant a sizable downward variance to a defendant convicted of distributing 49 grams of crack but would be required by the statutory minimum to impose a much higher sentence on a defendant responsible for only 1 additional gram. Second, the Government maintains that, if district courts are permitted to vary from the Guidelines based on their disagreement with the crack/powder disparity, "defendants with identical real conduct will receive markedly different sentences, depending on nothing more than the particular judge drawn for sentencing." Id., at 40.

---

[6]        United States v. Booker 543 U.S. 220 (2005).

Neither of these arguments persuades us to hold the crack/powder ratio untouchable by sentencing courts. As to the first, the LSD Guidelines we approved in Neal create a similar risk of sentencing "cliffs." An offender who possesses LSD on a carrier medium weighing ten grams is subject to the ten-year mandatory minimum, see 21 U.S.C. § 841(b)(1)(A)(v), but an offender whose carrier medium weighs slightly less may receive a considerably lower sentence based on the Guidelines' presumptive-weight methodology. Concerning the second disparity, it is unquestioned that uniformity remains an important goal of sentencing. As we explained in Booker, however, advisory Guidelines combined with appellate review for reasonableness and ongoing revision of the Guidelines in response to sentencing practices will help to "avoid excessive sentencing disparities." 543 U.S., at 264. These measures will not eliminate variations between district courts, but our opinion in Booker recognized that some departures from uniformity were a necessary cost of the remedy we adopted. See id., at 263. ("We cannot and do not claim that use of a 'reasonableness' standard will provide the uniformity that Congress originally sought to secure [through mandatory Guidelines]."). And as to crack cocaine sentences in particular, we note a congressional control on disparities: possible variations among district courts are constrained by the mandatory minimums Congress prescribed in the 1986 Act.

Moreover, to the extent that the Government correctly identifies risks of "unwarranted sentence disparities" within the meaning of 18 U.S.C. § 3553(a)(6), the proper solution is not to treat the crack/powder ratio as mandatory. Section 3553(a)(6) directs district courts to consider the need to avoid unwarranted disparities--along with other § 3553(a) factors--when imposing sentences. See Gall [v. United States], ante, __ U.S., at __, n. 6, __, 128 S.Ct. 586, at 596 - 597, n. 6,. Under this instruction, district courts must take account of sentencing practices in other courts and the "cliffs" resulting from the statutory mandatory minimum sentences. To reach an appropriate sentence, these disparities must be weighed against the other § 3553(a) factors and any unwarranted disparity created by the crack/powder ratio itself.

128 S. Ct. at 573 -74 (footnote omitted).

In his original Section 2255 memorandum Pierre-Louis does frame his challenge as also brought under the equal protection clause of the United States Constitution.  As the Government points out, United States v. Singleterry, 29 F.3d 124, 134-35 (1ˢᵗ Cir. 1994) remains the law in this circuit on such a challenge.  See United States v. Lewis, 40

F.3d 1325, 1344-45 (1ˢᵗ Cir. 1994); see also United States v. Garcia-Carrasquillo, 483

F.3d 124, 134-35 (1ˢᵗ Cir. 2007).

Based on my review of this state of the law, Pierre-Louis is not entitled to 28

U.S.C. § 2255 relief as to these two challenges to his sentence.

### *Conclusion*

For the reasons set forth above, I recommend that the Court deny Pierre-Louis 28

U.S.C. § 2255 relief.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

January 9, 2008.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge